IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

Brandon Clark and
Heidi Heffron-Clark,

(Chapter 7)

Debtors.    Case No. 10-18035

MEMORANDUM DECISION

    This 2010 bankruptcy case has returned after the United States Supreme Court affirmed that the debtors' only significant asset, an "inherited IRA," is not exempt. To administer that asset, the trustee has objected to a state-created lien claimed by an executing judgment creditor. Avoidance of that lien was asserted by the trustee in 2012, on different grounds, but that adversary proceeding was dismissed by stipulation while the parties awaited a final ruling on the IRA exemption.

    Prior to filing bankruptcy, the debtors' business was adjudged to be in breach of a personally guaranteed commercial lease. Judgment in the amount of $73,620.61 was entered against them in state court. To enforce the judgment, Resul and Zinigie Adili d/b/a Kegonsa Plaza (collectively "KP") served the debtors with an order to appear before the court commissioner for a supplemental examination. At the time, all parties believed that service of that order created a receiver's lien in favor of KP pursuant to Wis. Stat. § 816.03 and *In re Badger Lines, Inc.*, 224 Wis.2d 646 (1999). Before the supplemental examination occurred, the debtors filed bankruptcy. KP filed a proof of claim for $85,407.98, asserting the claim was secured by all of the debtors' non-exempt assets.

1

While the IRA exemption issue was being pursued, the trustee filed an adversary proceeding against KP alleging that the receiver's lien constituted an avoidable preferential transfer. He also alleged that KP was not entitled to a secured claim under § 502(d) to the extent he avoided the receiver's lien. Both parties admitted that a receiver's lien arose, under the then current state law, on debtors' non-exempt assets. The contested issues were (1) whether debtors were insolvent; (2) whether debtors' property was transferred for KP's benefit; and (3) whether the transfer enabled KP to receive more than it would have received in a chapter 7 distribution. These issues largely turned on whether debtors could exempt their inherited IRA. Prior to the scheduled trial, the parties stipulated to a dismissal with prejudice. Thus, the issue of lien validity was never tried and no court ruled on it.

Very shortly after the U.S. Supreme Court rendered its decision, the Wisconsin Supreme Court issued an opinion placing a new and substantial doubt on the validity of KP's lien. Without acknowledging that it was overruling the case on which the trustee and KP relied, the Wisconsin Supreme Court undercut the foundation of *In re Badger* in *Associated Bank v. Collier*, 355 Wis. 2d 343 (2014). The trustee now objects to KP's secured claim pursuant to 11 U.S.C. § 502(a) based on *Associated Bank N.A. v. Collier*.[1] Although the claim would have been secured under previous interpretations of *In re Badger*, he argues *Collier* clarifies that there is no lien and therefore, no collateral securing KP's claim.[2] McFarland State Bank ("MSB") joins in this objection as the assignee of Evergreen State Bank.

---

[1] Wisconsin Supreme Court case *Attorney's Title Guar. Fund, Inc. v. Town Bank*, 2014 WI 63 (2014) is also cited by parties and applies the holding of *Collier*. The court focuses solely on the effect of *Collier* for this opinion.
[2] There may be a statutory interpretation argument that this objection is not properly before the court because 11 U.S.C. § 502(b) limits the types of claims that may be disallowed under § 502(a) and the proper avenue is an adversary proceeding challenging lien validity under § 506(a). This court declines to address this issue as KP failed to raise it. See *In re Muller*, 479 B.R. 508, 512 (Bankr. W.D. Ark. 2012)("If a party in interest objects to a claim, then the court shall determine the amount of such claim as of the date of the filing of the petition, unless one of nine enumerated exceptions apply. 11 U.S.C. § 502(b)(1)–(9); *In re Dove–Nation*, 318 B.R. at 150. The nine exceptions found in § 502(b) are 'the sole grounds for objecting to a claim and [§ 502(b) ] directs the court to allow the claim

2

The validity of the lien depends on two determinations: (1) whether *Collier* applies retroactively and (2) whether this court is precluded from hearing this objection.

I. *The court should apply Associated Bank v. Collier retroactively.*

*Associated Bank v. Collier*, 355 Wis. 2d 343, appears to change what is required to obtain a receiver's lien as described in *In re Badger Lines*, 224 Wis. 2d. 646. *Badger Lines* came before the Wisconsin Supreme Court on a certified question from the United States Court of Appeals for the Seventh Circuit. *Id.* at 648. "The essential question before [the] court [was] whether a creditor who initiates supplementary proceedings under chapter 816 must do more than serve a debtor with notice to appear in order to obtain a superior lien that cannot be overcome by another creditor on a simple contract." *Id.* at 648-49.[3]

Prior to bankruptcy, Badger's creditor took a number of steps to collect its claim: (1) obtained a default judgment, (2) docketed it, (3) obtained and served an order directing Badger to appear for a supplementary proceeding and enjoining Badger from transferring its assets, (4) had a supplemental receiver appointed, and (5) issued a turnover order instructing turnover of its assets and enjoining Badger from transferring its assets. *Id.* at 649. The bankruptcy filing prompted a preference action by the trustee. *Id.* While the parties were arguing about the

---

unless one of the exceptions applies.' *Id.; see also In re Cluff,* 313 B.R. 323, 331 (Bankr.D.Utah 2004) ('Courts have no discretion to disallow claims for reasons beyond those stated in the statute.'); *In re Todd Michael Taylor,* 289 B.R. 379, 384 (Bankr.N.D.Ind.2003) ('a claim may not be denied for just any reason, but only for one of the reasons Congress has included in § 502(b)')").

[3] Understanding *Badger* may be aided by a brief explanation of Wisconsin collection law. A supplemental proceeding allows a judgment creditor to identify a debtor's assets available to satisfy a judgment. See Wis. Stat. § 816.03. Obtaining an order to apply specific personal property to the satisfaction of a judgment with the aid of a supplemental receiver is an alternative to the common law practice of issuing writs of execution allowing a sheriff to seize the debtor's property, also known as levy. *Collier,* 355 Wis. 2d at 348. After a final money judgment was entered, the clerk of court, upon request, had to issue a writ of execution. See Charles Tabb and Ralph Brubaker, *Bankruptcy Law Principles, Policies, and Practice,* 14 (3rd ed. 2010). In a minority of states, a lien arose when the writ was delivered to a sheriff to execute. *Id.* "The lien covered the debtor's non-exempt property…However, such a lien was tentative or contingent (inchoate), pending an actual subsequent levy by the sheriff before the writ's return date." *Id.* In the majority of states, however, a lien did not arise until levy. *Id.* Essentially, in order to obtain a lien on personal property, a judgment creditor was required to take possession of the debtor's property but if a priority dispute arose, the creation of the lien could "relate back" to certain points in time such as delivery of a writ of execution or, as contemplated in *Badger,* service of an order to appear for a supplementary proceeding.

3

perfection date for the purposes of a preference action, the court questioned whether perfection was even necessary. *Id.* at 653 ("The parties are in agreement that Wisconsin law does not specify whether a receiver's lien must be perfected and, if so, how that is to be accomplished").

> In Wisconsin, if a receiver's lien requires perfection, that requirement stems from our case law and not from any provision within chapter 816. The trustee argues that our cases have presumed that something more than service of a subpoena to appear at a supplementary proceeding is required for an enforceable lien. However, the trustee also admits that to date we have not specifically articulated the contours of that additional requirement.

*Id.* at 654-55. The court concluded "a creditor's lien is valid and superior against other creditors at the time the creditor serves the debtor with a summons to appear at the supplementary proceeding under Wis. Stat. § 816.03(1)(b)." *Id.* at 649. However, this holding must be read in conjunction with the court's other conclusion that "the appointment of a receiver is [not] the apogee of obtaining a valid lien against a debtor [because it is] nothing more than a 'formal matter.'" *Id.* at 656. Consequently, when the court held "Wisconsin law does not require a creditor to take additional steps to perfect a receiver's lien beyond service on the debtor," the decision was generally interpreted as creating a receiver's lien at the moment a party was served with an order to appear for a supplemental examination. *Id.* at 661. Thus, service created a secret lien which required no general notice or perfection to gain priority over subsequent liens.[4]

---

[4] Secret liens have been criticized by scholars for being in contravention to the general direction of commercial laws after the advent of Article 9 of the Uniform Commercial Code in the early 1960s. See Chad J. Pomeroy, *Ending Surprise Liens on Real Property*, 11 Nev. L.J. 139, 178 (2010)(footnoting the bankruptcy court in *Badger* which had initially criticized the creation of secret lien: "From an equitable perspective, the law has consistently found such liens to be unfair. Surprise liens defeat the legitimate expectations of bona fide purchasers and so create significant uncertainty."); see also the underlying bankruptcy court decision in *In re Badger Lines, Inc.*, 199 B.R. 934, 939 (Bankr. E.D. Wis. 1996)("Self-perfecting, and therefore secret, liens should be the exception, not the rule. Long ago, the Wisconsin Supreme Court in *Wilson v. Rudd,* 70 Wis. 98, 104, 35 N.W. 321 (1887), declared that '[t]he law does not favor secret liens in favor of anyone.' Secret liens can only produce uncertainty for potential, unsuspecting creditors, and a policy has developed in the commercial world which frowns upon secret liens. *Matter of Einoder,* 55 B.R. 319, 328 (Bankr.N.D.Ill.1985). This court is of the opinion that a Wisconsin court would find that Mann's lien is not self-perfecting and that, if perfected, such perfection occurred within the preference avoidance period.").

4

In *Associated Bank v. Collier,* the Wisconsin Supreme Court decided to clarify *In re Badger* and held "[m]erely serving an order to appear for supplemental proceedings also will not create a common law lien on the debtor's personal property." *Associated Bank, N.A. v. Collier*, 355 Wis. 2d at 366; see also *Attorney's Title Guar. Fund, Inc. v. Town Bank*, 2014 WI 63, ¶ 31 (2014)("The only action Town Bank took was to move for the appointment of a supplementary receiver and to grant that receiver the authority to proceed on Brophy's malpractice claim. The court never ruled on Town Bank's motions. Stated otherwise, because Town Bank did not levy before Heartland achieved statutory perfection, we conclude that Heartland has the superior interest in the proceeds. *See Associated* \*\*36 *Bank,* 355 Wis.2d 343, ¶ 38, 852 N.W.2d 443"). In distinguishing *Badger Lines* from *Collier*, the court notes:

> In *Badger Lines,* we did not have a full record that displayed all the issues that we might have considered; therefore, it differed significantly from the case now before us. *Badger Lines'* statement that the date of service on Badger Lines of the order to appear for supplemental proceedings was the date of "perfection" must be limited to the context in which it arose. That context did not include an assertion that common law liens do not require "perfection," but rather, liens arise in specifically identified, non-exempt personal property when that property is levied.

*Collier*, 355 Wis. 2d at 365-66 (Discussing the fact that, in *In re Badger Lines*, a supplemental receiver had been appointed to administer Badger Lines' property for the benefit of the creditor before the case made its way to the court). Basically, *Collier* asserts that a lien is not actually created until levy occurs. *Id.* at 355 ("…entering a judgment in the judgment and lien docket does not create a statutory lien on the debtor's personal property. Instead a judgment creditor obtains an unsecured, inchoate interest with regard to the debtor's personal property, tangible and intangible, against which to levy.") *Collier* did not, however, address whether a lien could

5

"relate back" to the date of service for priority purposes when two judgment creditors each attempt to levy. *Id.* at footnote 8 ("It should be noted that when two judgment creditors with docketed money judgments each attempt to levy identified, non-exempt personal property, or when a perfected secured party's rights are at issue, further analysis may be necessary to determine relative priorities"). Yet, the only way to reconcile *Collier's* statement that it was merely distinguishing *Badger,* rather than overruling it, is to infer that the lien "related back" to the date of service for the purposes of priority only.

The majority in *Collier*, however, may have been somewhat disingenuous when it interpreted the holding of *Badger Lines*. The dissent in *Collier* is probably correct in its assertion that *Badger Lines* created a secret lien at the time of service. In fact, the author of *Badger Lines*, Justice Ann Bradley, joined the dissent of *Collier* arguing the majority actually overruled *Badger*. *Collier,* 355 Wis. 2d at 391 ("The Wisconsin Supreme Court, *In re Badger Lines, Inc.*, held that service upon the debtor of an order to appear at a supplemental examination under Chapter 816 establishes at the time of service a lien in favor of the creditor without requiring the creditor to take additional steps to perfect the lien").

If *Collier,* in effect, overruled *Badger Lines*, we still must decide whether *Collier* should be applied retroactively.[5] The Wisconsin Supreme Court has stated three factors for retroactive application: "(1) whether the holding establishes a new rule of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression, the resolution of which was not clearly foreshadowed; (2) whether retroactive application would

---

[5] This case is still sub judice. Thus, if *Associated Bank N.A.* applies retroactively, the court has the duty to give effect to the ruling and find KP's lien is unsecured. See *Jones v. Schellenberger*, 225 F.2d 784, 790-91 (7th Cir. 1955) ("It is the duty of the federal courts at any stage in the course of a proceeding to give effect to state law… 'Until such time as a case is no longer sub judice, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court.' Under this pronouncement it appears plain that a District Court as well as this court is obligated to give effect to any change in state law made during the course of a proceeding...")(citations omitted).

6

further or impede the operation of the new rule and (3) whether retroactive application could produce substantial inequitable results." *State ex rel. Buswell v. Tomah Area Sch. Dist.*, 2007 WI 71, ¶46 (2007).

Assuming *Collier* overruled *Badger* and KP would not have a lien because it never levied on debtors' assets, retroactive application of that rule would not produce substantially inequitable results. KP's argument that it relied on the previous law by litigating the IRA issue to completion is not persuasive. The IRA is the only asset in the estate. Even an unsecured creditor would have had a strong motivation to litigate that the IRA was non-exempt to increase its chances of receiving payment on its claim. Moreover, KP's role in the litigation was largely redundant to that of the trustee. In the absence of a showing of true prejudice, applying *Collier* retroactively furthers operation of the new rule of law. So, even if KP had a lien under *Badger Lines*, the *Collier* holding applies retroactively to remove it.

II.   *This court is not precluded from hearing this objection*

The trustee stipulated to dismissal of his preference action and it was so ordered by this court. But that order does not preclude our taking up the question of whether KP's claim is secured by a valid lien. The validity of the lien had been admitted, but both the admission and the dismissal predated *Associated Bank v. Collier*. And, while the validity of the lien could have been litigated in the dismissed adversary proceeding, it was not. Nor, were the parties required to do so.[6]

---

[6] Courts have also found that the rules of compulsory counterclaims do not apply to claim objections because they are "contested matters" rather than adversary proceedings in which the Federal Rules of Civil Procedure apply. See *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co.*, 1991 WL 4417, *3 (S.D.N.Y 1991); *In re Fonda Grp., Inc.*, 108 B.R. 962, 969-70 (Bankr. D.N.J. 1989)(citing D-1 Enterprises v. Commercial State Bank, 864 F.2d 36, 39-40 (5th Cir. 1989)("There are two basic forms of adversary process within a bankruptcy case: 'contested matters' and 'adversary proceedings.' Counterclaims are compulsory only in 'adversary proceedings,' but not in the quick motion-and-hearing style 'contested matters.'... Thus we conclude that, as a general rule, neither the notion of *res judicata* nor that of compulsory counterclaim has application to those contested matters where the claim sought to be barred could not effectively have been litigated. Only such matters were presented here."). However, these

7

*A. The court is not precluded by res judicata because the causes of action are not identical.*

"The preclusive effect of a federal-court judgment is a matter of federal common law." *Firishchak v. Holder,* 636 F.3d 305, 308 (7th Cir. 2011)(citing *Taylor v. Sturgell,* 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). Generally, federal common law does not allow new precedent to overcome the doctrine of claim preclusion ("res judicata"). *Justice v. Town of Cicero, Ill.,* 827 F. Supp. 2d 835, 839 (N.D. Ill. 2011)(citing *Avear-Velez v. Mukasey,* 540 F.3d 672, 678 (7th Cir. 2008)).

In order to preclude the claim objection under the doctrine of res judicata, three elements must be met: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits in the earlier suit." *Andersen v. Chrysler Corp.,* 99 F.3d 846, 852 (7th Cir. 1996). Only the second element, identity of causes of action, has been disputed.

The United States Court of Appeals for the Seventh Circuit explained how to determine if a cause of action is similar for the purposes of res judicata:

> Res judicata was not meant to be a trap for the unwary and members of the bar ought to be able to advise their clients as to its applicability. Recognizing the importance of providing adequate notice to litigants as to which claims they need to bring in a single suit, we therefore recently refined the "same transaction" test by focusing on whether the multiple claims turned on the "same

---

courts were dealing with preference actions filed after other contested matters. It is possible a claim objection might be a compulsory counterclaim if the preference action is filed first. The United States Court of Appeals for the Seventh Circuit uses the logical relationship test to determine if the transaction or occurrence is the same for purposes of Rule 13(a). *Burlington Northern R.Co. v. Strong,* 907 F.2d 707, 711 (7th Cir. 1990). "There is no rigid formula for determining whether claims are logically related, however "[courts] should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *In re Pullman Const. Indus., Inc.,* 142 B.R. 280, 283 (Bankr. N.D. Ill. 1992)(citations omitted) *aff'd sub nom. United States v. Pullman Const. Indus., Inc.,* 153 B.R. 539 (N.D. Ill. 1993). Because the legal basis for the claim objection did not arise until *Associated Bank v. Collier* was decided, this claim objection was clearly not a compulsory counterclaim at the time of the preference action.

8

> facts." *Herrmann,* 999 F.2d at 226. Under this approach, "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citations omitted). By looking to whether the facts the plaintiff must prove in two claims are substantially similar, this test offers litigants a more definite touchstone for determining with certainty whether claims may be split or must be brought in a single suit. Nonetheless, even the "facts" of a case may be described either broadly or narrowly. Therefore, our cases have emphasized that, to ensure fair notice to litigants and to yield predictable results, courts should examine the "facts" of a case at a sufficient level of specificity.

*Andersen v. Chrysler Corp.,* 99 F.3d at 852-53. The key inquiry is whether the claims depend on proof of the same factual allegations.

Generally, courts are split on whether a § 502 claim and § 547 claim are identical for the purposes of res judicata. Some courts cite *Katchen v. Landy*, 382 U.S. 323, 330-31 (1966), for the notion that claim allowance and avoidance actions should be brought at the same time:

> Thus, according to *Katchen,* when a trustee raises a preference objection to a creditor's claim, the very nature of the statutory scheme requires the bankruptcy court to adjudicate the preference matter before allowing or disallowing the claim. Even a preference matter bearing no relationship to the objected-to claim must nevertheless be adjudicated at that stage because § 502(d), like its predecessor, "is concerned with *creditors* rather than *claims* and thus contemplates that allowance of a claim may be conditioned on surrender of preferences received with respect to transactions unrelated to the claims." *Katchen,* 382 U.S. at 330 n. 5 (emphasis in original).

*In re Cambridge Indus. Holdings, Inc.,* 2006 WL 516764, at *2 (D. Del. Mar. 2, 2006)(Explaining the *Katchen* argument but ultimately concluding it only applied to jurisdiction). However, other courts decline to apply res judicata when a claim is allowed and the trustee subsequently tries to avoid the lien as a preference. See *In re Popular*, 395 B.R. 587, 592 (Bankr. D.N.J. 2008)("The district court, however, found that '*Katchen* does *not* stand for the proposition that the trustee waives his right to initiate a preference action against a creditor if he

9

fails to raise a preference objection during the claims-allowance process.' *In re Cambridge Holdings,* 2006 WL 516764 at *2. *Katchen* focused on the relationship between a preference action and the claim-allowance process, but simply in a jurisdictional sense. *Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Systems, Inc.),* 293 B.R. 479, 488 (Bankr.E.D.Mo. May 28, 2003)"). I was unable to find any case where a preference action was determined and then followed by a claim objection. But, a claim objection under § 502(a) may cover a much broader factual inquiry than a preference action. If a court is not precluded from hearing a preference action after a claim is allowed, then logically, the court is not precluded from hearing a claim objection after a preference action is dismissed, unless the dismissal is based on a failure to prove the fact on which the claim objection is dependent.

The trustee's admission, that KP's lien was valid, was not included in the dismissal order or stipulation, it occurred in a pre-trial statement with no binding effect. The validity of the lien, which is central to the claim objection, was not a contested issue for the preference recovery. The facts necessary to support the preference allegations are only tenuously related. After recognizing that the creation of the lien affected a transfer of the debtors' property, the controlling issue became the debtors' financial status at the time of filing. The factual allegations of the two causes of actions, while related, are not the same. Accordingly, the claim objection is not precluded by the outcome of the preference recovery proceeding.

B. *The court is not precluded based on law of the case because there is an exception for intervening precedent.*

"Although we have described the 'law of the case as an amorphous concept,' 'as most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Pepper v.*

10

*U.S.*, 131 S.Ct. 1229, 1250 (2011)(citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). It is important to note, this doctrine does not limit the tribunal's power, only directs its discretion. *Id.*

While law of the case seems applicable, there is an exception for intervening case law. "The doctrine, however, allows some flexibility, permitting a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993)(citing *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986)). As discussed earlier, either KP did not originally obtain a lien or there was a change in law. Thus, law of the case does not preclude the court from hearing this objection.

C. *The court is not precluded based on estoppel by record because the admission was conditioned on the controlling precedent, In re Badger.*

In general, estoppel prohibits a person from contradicting what he earlier affirmed. *Caulfield v. Noonan*, 295 N.W. 466, 471 (Iowa 1940). Estoppel by record is a concept taken from early English law. Jack Friedenthal et al., Civil Procedure, 651 (4th ed. 2005)("An incontestable presumption of truth was attached to the records made by the King's court… In its new role, it supported the preeminence of the King's courts, which were 'of record' over lower courts, which did not keep formal transcripts"). The English courts' records are no longer considered to be unimpeachable as the word of the king (now queen) and the doctrine of estoppel by record is rarely raised as a modern day preclusion argument. *Id.*

The trustee's admission in the pre-trial statement that the lien was valid pursuant to *In re Badger* does not estop his application of the change in law wrought by *Collier*. KP cites *Mutual Life Ins. Co. of Newark v. Newton*, 89 U.S. 32 (1874), for the proposition that every admission is

11

taken as a fact for the purposes of estoppel by record. The exact wording of the case, however, suggests KP has misinterpreted its application:

> Every admission is to be taken as an entirety of the fact which makes for the one side, *with the qualifications which limit, modify, or destroy its effect on the other side.* This is a settled principle which has passed by its universality into an axiom of the law. Here the admission related to the two particulars which the proofs established, the death of the insured and the manner of his death, both of which facts appear by the same documents. They showed the death of the insured only as they showed that he had committed suicide, and all that the officers of the company evidently intended by their declaration was that they were satisfied with the proofs of the one fact because they established the other. The whole admission should, therefore, have been taken together. If it was sufficient to establish the death of the insured, it was also sufficient to show that the death was occasioned in such a manner as to relieve the company from responsibility.

*Id.* at 35 (emphasis added). The Supreme Court made sure to highlight that the admission must be interpreted in light of any qualifications which limit, modify, or destroy its effect. The trustee based his admission on his interpretation of *Badger*. Debtors never agreed to give KP a lien and the trustee's admission does not create one if it did not already exist under law. Consequently, the pre-trial admission does not preclude the claim objection.

D. *The court is not precluded based on laches because there is not an adequate showing of lack of diligence or prejudice.*

KP argues the objectors sat on their rights and the objection is barred by the doctrine of laches. "This defense 'requires proof of (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense.' *Kansas v. Colorado,* 514 U.S. 673, 687, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995) (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551, (1961))." *Pruitt v. City of Chicago, Illinois,* 472 F.3d 925, 927 (7th Cir. 2006).

This case is unique in that it was a "no asset" case prior to the U.S. Supreme Court's June 12, 2014 decision that an inherited IRA was not exempt. See *Clark v. Rameker et al*, 573 U.S. 2242 (2014). One month later, the Wisconsin Supreme Court decided *Collier*. The objectors objected on September 26, 2014, two months after the *Collier* decision. A two month delay is reasonable given the circumstances. Furthermore, KP was not prejudiced because the assets of the estate have yet to be distributed. The facts of this case do not indicate a lack of diligence or prejudice to KP. The doctrine of laches is not applicable.

III.   *Conclusion: The claim is disallowed.*

The objecting party must produce evidence sufficient to rebut the presumption of a proof of claim's validity. *In re Hood*, 449 F. App'x 507, 509-10 (7th Cir. 2011). The objectors did so. Accordingly, the burden shifted to KP *de novo*. See *In re Airadigm*, 376 B.R. 903, 916 (Bankr. W.D. Wis. 2007). KP asserted several theories of preclusion which are not persuasive. Therefore, KP's claim is disallowed as a secured claim and allowed as an unsecured claim without post-petition interest. It may be so ordered.

Dated:  April 23, 2015

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

13